**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JW DEVELOPMENT, LLC** | **Civil Action No. 2:22-cv-390** |
| **versus** | **Judge Lance M. Africk** |
| **INDEPENDENT SPECIALTY INSURANCE COMPANY** | **Magistrate Donna Phillips Currault** |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE EVIDENCE AND TESTIMONY REGARDING JS HELD'S ORIGINAL ESTIMATE**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, JW Development Company (hereinafter "Plaintiff"), and files its opposition to the Motion to Exclude Evidence and Testimony Regarding JS Held's Original Estimate filed by Defendant, Independent Specialty Insurance Company's (hereinafter "ISIC"), as follows:

## I. INTRODUCTION AND BACKGROUND

Plaintiff owns a two-story building comprised of fourteen separate apartment units located at 76 Carriage Lane, Destrehan, Louisiana 70047 (hereinafter the "Property").[1] Plaintiff purchased a policy of insurance through ISIC, policy number VVX-CU-708577-01, which covered the Property against perils including hurricanes.[2] On or around August 29, 2021, Hurricane Ida caused significant damages to the Property and Plaintiff timely reported that loss to ISIC.[3]

ATA Loss Consulting (hereinafter "ATA") inspected the Property on behalf of Plaintiff on or about September 4, 2021, and created an estimate of damages.[4] ATA documented damage to

[1] R. Doc. 1-1.
[2] *Id.*
[3] *Id.*
[4] *See* R. Doc. 20-5, ATA Loss Consulting Estimate.

each of the fourteen units as well as to the roofing system of the building.[5] In total, ATA documented $540,378.13 RCV in damages to the Property.[6] ATA's estimate, photographs, and a demand for the release of unconditional tenders was forwarded to ISIC on or around October 8, 2021.

In response, ISIC contracted with JS Held to inspect the building and prepare an estimate of damages. Marcos Lopez of JS Held inspected the Property on October 15, 2021. Notably, Mr. Lopez brought with him a copy of the ATA estimate to review during his inspection and use as a "guideline" in drafting his estimate.[7]

ISIC also retained an engineer, Larry Dean Dixon of FCG Associates, to inspect the Property. Mr. Dixon inspected same on November 23, 2021, and purportedly made determinations on causation of what damages he believed were caused by Hurricane Ida—and covered under the ISIC policy—and, even having not inspected the property previously, what damages were pre-existing.

Having heard nothing from ISIC in terms of its inspections, estimates, or payment, Plaintiff filed suit on December 13, 2021.[8] Sometime after this, on or around January 2, 2022, Plaintiff was made aware of the final JS Held estimate documenting damages to only Unit 12 and the roofing system.[9] In total, Mr. Lopez documented a net claim of $69,202.97.[10] On or around January 31, 2022, ISIC issued its first and only payment to Plaintiff.

---

[5] *Id*.
[6] *Id*.
[7] *See* attached, Deposition of Marcos Lopez, attached hereto as Exhibit A, pg. 55, lines 9-21.
[8] R. Doc. 1-1.
[9] *See* attached, December 12, 2021, JS Held Final Estimate, attached hereto as Exhibit B; *see also* Exhibit A, pg. 16, lines 5-15; pg. 28, lines 12-20; pg. 32, line 9; pg. 33, lines 1-4; pg. 41, lines 7-17; pg. 74, line 12.
[10] *Id.*

On June 23, 2022, pursuant to this court's scheduling order, ISIC filed its Witness and Exhibit List wherein it indicated Mr. Lopez would be called to testify as to the damage estimate he prepared and identified his report and estimates as exhibits to be used at trial.[11]

Mr. Lopez was deposed on June 29, 2022. During this deposition, Mr. Lopez provided significant testimony regarding not only his involvement as the building consultant who prepared the JS Held estimate, but also as to multiple aspects of ISIC's adjustment of Plaintiff's Ida claim. First, it must be noted that, despite having been retained by ISIC to prepare the estimate of damages to the Property, JS Held was specifically retained only to document any damage following a visual inspection and create an estimate of damages accordingly.[12] At no time was JS Held directed to make any causation determinations or, to the extent it could, any coverage determinations.[13] At least not until it could be reviewed by his project manager and ISIC.[14]

The other important fact to come out of Mr. Lopez's deposition was that at least eight different versions of the estimate had been created prior to the final version provided to Plaintiff in January of 2022.[15] These included the "original" JS Held estimate dated December 12, 2021, containing documented damage to all fourteen units in the Property as well as to the roofing system.[16] In total, the original JS Held estimate documented a total of $344,658.29 RCV in damages to the Property—an amount nearly five times that of the final version.[17] This original estimate was provided to ISIC's desk adjuster, Brad Reigler.[18] From that point, Mr. Reigler began discussion with Thomas Brown, the director of JS Held, and Heath Blumberg, Mr. Lopez's project

[11] R. Doc. 15.
[12] *See* Exhibit A, pg. 16, lines 7-15.
[13] *See* e.g., Exhibit A, pg. 52, lines 12-15.
[14] *See e.g.,* Exhibit A, pg. 23, line 14 through pg. 24, line 21; pg. 28, lines 12-23.
[15] *See* Exhibit A, pg. 38, line 22 through pg. 39, line 7.
[16] *See* Exhibit A, pg. 38, lines 1-21.
[17] *See* attached, the Original JS Held Estimate, attached hereto as Exhibit C.
[18] *Id*.

manager, parsing out items of damage documented by Mr. Lopez.[19] Mr. Lopez was subsequently instructed to remove line items—and ultimately thirteen full units—from the original JS Held estimate without as much as an explanation as to why.[20] What remained was an amalgamation of the opinions of Mr. Dixon and Mr. Reigler on damages covered under the Policy.

Presumably, having heard the testimony of Mr. Lopez regarding the original estimate of JS Held, on June 12, 2022, ISIC filed its Motion in Limine to Exclude Evidence and Testimony Regarding JS Hield's Original Estimate.[21] ISIC argues that this evidence or testimony is not relevant to the matter at hand and that any such evidence or testimony would be unduly prejudicial or mislead and confuse the jury.[22]

The existence of the original estimate itself, the information contained within, and the testimony to be elicited regarding the preparation of the original estimate and how it evolved into the final version are all relevant to Plaintiff's claims for breach of contract and for bad faith.

## II. LAW AND ARGUMENT

### A. Relevance and Admissibility

The quintessential prerequisite of the admissibility of evidence at trial is that evidence be relevant.[23] For evidence to be relevant it must meet two distinct requirements: first, that evidence must have any tendency to make a fact more or less probable than it would be without the evidence, and second, that evidence must be of consequence necessary to the determination of the action.[24] Whether it is of consequence is a question to be governed by the substantive law at issue.[25]

---

[19] *See e.g.*, Exhibit A, pg. 23 line 14 through pg. 24, line 21; pg. 28, lines 12-22; pg. 34, line 15 through pg. 35, line 13; *see also* attached, Email Chain including Brown, Blumberg, Riegler, and Lopez, attached hereto as Exhibit D.
[20] *See, e.g.* Exhibit A, pg. 40, lines 2-21.
[21] R. Doc. 23.
[22] *Id*.
[23] *See* Fed. Rule of Evidence Rule 402.
[24] *See* Fed. Rule of Evidence Rule 401.
[25] *See* McCormick on Evidence s 185, at 434 (2d ed. 1972); 1 Weinstein's Evidence P 401(03), at 401-13 (1980).

Ultimately, even if the evidence is relevant, the court has the discretion to exclude it should it determine that its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the jury, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.[26]

**B. Obligations of an Insurer in Adjusting a Claim**

Generally, under La. R.S. 22:1892 and 22:1973, a party seeking relief under either statute has the burden of establishing three things: (1) the insurer received a satisfactory proof of loss; (2) the insurer failed to pay the claim within the applicable statutory period (thirty or sixty days); and (3) the insurer's failure to pay the claim was arbitrary and capricious.[27]

Additionally, an insurer owes to his insured a duty of good faith and fair dealing.[28] The insurer has an affirmative duty to adjust claims fairly and promptly.[29] Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.[30]

It is well settled that a "satisfactory proof of loss" is only that which is sufficient to fully apprise the insurer of the insured's claims.[31] Additionally, with regard to the form of a proof of loss, this court has stated that proof of loss is a "flexible requirement to advise an insurer of the facts of the claim" and that it need not be in any formal style.[32] "As long as the insurer receives

[26] *See* Federal Rule of Evidence 403.
[27] *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 954 F. Supp. 2d 440, 443 (E.D. La. 2013) (citing *Dickerson v. Lexington Ins. Co.*, 556 F.3d 290 (5th Cir. 2009)); *see also, Talbert v. State Farm Fire & Cas. Ins. Co.*, 971 So.2d 1206, 1212 (La.App. 4th Cir.2007).
[28] La. R.S 22:1973(A).
[29] *Id*.
[30] *Id*.
[31] *Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1114 (citing *McDill v. Utica Mut. Ins. Co.,* 475 So. 2d 1085 1089 (La. 1985)); *see also, Hart v. Allstate Ins. Co.*, 437 So. 2d 823, 828 (La. 1983).
[32] *Louisiana Bag Co. v. Audubon Indem. Co.*, 2008-0453 (La. 12/2/08), 999 So. 2d 1104, 1114 (citing *Sevier v. U.S. Fid. & Guar. Co.*, 497 So. 2d 1380, 1384 (La. 1986)).

sufficient information to act on the claim, 'the manner in which it obtains the information is immaterial.'"[33]

The phrase "arbitrary and capricious" means a "vexatious refusal to pay," "without reasonable or probable cause or excuse."[34] When determining whether or not an insurer's refusal to pay is arbitrary, capricious, or without probable cause, the inquiry is usually focused on whether the insurer acted reasonably in its adjustment of the claim in light of the facts known—or that should have been known—by the insurer at the time of its action or inaction.[35] Normally, the reasonableness of the insurer's claims handling will be a factual issue, and cases involving this issue will be fact specific."[36]

### C. The Original JS Held Estimate is Relevant to the Calculation of Damages

There are three estimates at play in this matter: (1) the ATA estimate documenting $540,378.12 in damages including all fourteen units and the roofing system; (2) the original JS Held estimate documenting $344,658.29 in damages, including all fourteen units and the roofing system; and (3) the final JS Held estimate documenting only $62,202.97 in damages, including only Unit 12 and the roofing system.

ISIC seems to justify the extreme amount difference in the two JS Held estimates by pointing to pre-existing damages and its coverage determinations made pursuant to Mr. Dixon's report. As for the pre-existing damages, Mr. Joshua Wilson has executed a declaration that the

---

[33] *Id*.
[34] *XL Specialty Ins. Co.*, 954 F. Supp. at 443 (citing *Dickerson*, 556 F.3d at 300).
[35] *See Reed v. State Farm Mut. Auto. Ins. Co.,* 857 So.2d 1012, 1021 (La.2003); *First American Bank v. First American Transp. Title Ins. Co.*, C.A.5 (La. 2014) 759 F.3d 427; *Melendez v. S. Fid. Ins. Co*., 503 F.Supp.3d 504, 511 (E.D. La. 2020).
[36] *Id*. (citing 15 WILLIAM SHELBY MCKENZIE & H. ALSTON JOHNSON, III, LA. CIV. L. TREATISE: INSURANCE LAW AND PRACTICE § 11:15 (4th ed. 2020)).

damages he observed at the Property were not present at the time he left for the storm and that the ATA estimate was comprised of those damages present following Hurricane Ida.[37]

It must be emphasized, again, that Mr. Lopez had the ATA estimate in hand during his inspection, that Mr. Lopez reviewed the line items in the ATA estimate, that Mr. Lopez used the ATA estimate as a "guideline" and ultimately, and necessarily, that Mr. Lopez made the determinations necessary in preparing an estimate that was nearly $200,000.00 less.[38] Clearly, Mr. Lopez identified damages to the Property and wrote an estimate he thought to be appropriate to remediate those damages.

It was through no action of Mr. Lopez that the original JS Held estimate was revised; at no point did Mr. Lopez reinspect the property and determine that he had erred in including a line item of damage because it did not actually exist or otherwise. Instead, the revisions were based on the direction of ISIC.[39]

The value of the damages sustained by the Property from Hurricane Ida remain in dispute and, at this point, there are three differing opinions on the total amount. Those being that of ATA, of Mr. Lopez in his original estimate, and those of ISIC's in the revised estimate, be it through Mr. Lopez's subsequent report. Based on the facts at issue here, the amount of damages documented by Mr. Lopez after his actual visual inspection are just as relevant as those by ATA or in the revised JS Held estimate.

**D. The Original JS Held Estimate is Directly Relevant to Plaintiff's Breach of Contract Claim**

Plaintiff's Petition alleges that ISIC breached the Policy by failing to timely tender insurance proceeds as required by the Policy after it received satisfactory proof of loss by way of

[37] *See* attached, Declaration of Joshua Wilson, attached hereto as Exhibit E.
[38] *See* Exhibit C.
[39] *See* Exhibit D.

the ATA estimate. Likewise, ISIC breached the Policy by failing to timely tender undisputed insurance proceeds after having received satisfactory proof of loss by way of JS Held's estimates. Plaintiff has also alleged that ISIC breached the Policy by failing to conduct the adjustment of its Ida claim in good faith and with fair dealing. The original estimate is inherently relevant to all of this.

First, the original JS Held estimate establishes that, by its existence alone, that ISIC had received a satisfactory proof of loss. Louisiana requires only that a proof of loss advises an insurer of the facts of the claim.[40] How that insurer obtains that information is "immaterial."[41] The subsequent actions of the insurer are evaluated based on the facts that were known or should have been known to the insurer at that time.[42]

The testimony regarding the original estimate establishes that, even disregarding the demand forwarded to ISIC prior to JS Held's involvement, ISIC had knowledge of a satisfactory proof of loss by way of the ATA estimate by at least October 15, 2021, as it provided same to JS Held prior to its inspection.[43] Further, the original estimate itself was forwarded to ISIC for review at least by December 12, 2021.[44] As of that date, ISIC was sufficiently advised there were undisputed amount due to Plaintiff.

ISIC argues in its Motion in Limine that this is irrelevant because the January 31, 2022, payment was based on the final estimate and not the original estimate. This is immaterial to the issues here. The fact that it sat on the original estimate for almost a month until the final revisions were completed does not change the fact that ISIC had in fact already received, had knowledge of,

---

[40] *See Louisiana Bag Co.*, 999 So. 2d at 1114; *McDill*, 475, So. 2d at 1089; *Sevier*, 497 So. 2d at 1384
[41] *Id*.
[42] *See, e.g. First American Bank*, 759 F.3d at 436; *Melendez*, 503 F. Supp.3d at 511.
[43] *See* Exhibit A, pg. 55, lines 9-21.
[44] *See* Exhibit C.

and benefitted from the use of the original JS Held estimate during its adjustment of Plaintiff's Ida claim.

Because the reasonableness of ISIC's claims handling is a fact intensive issue, the knowledge that it possessed from the original JS Held estimate is relevant to the claims herein.

**E. The Original JS Held Estimate is Directly Relevant to Plaintiff's Bad Faith Claim**

Plaintiff's Petition also brings claims for bad faith penalties under Louisiana Revised Statutes §§ 22:1892 and 22:1973. Plaintiff therefore is required to establish that ISIC failed to pay within the statutorily applicable time period and that the failure to pay was arbitrary and capricious.[45] Whether or not the actions of ISIC were arbitrary and capricious revolves around the knowledge possessed by the insurer at the time of the alleged arbitrary or capricious actions.[46]

As discussed previously, the existence of the original JS Held estimate establishes that ISIC, at least by December 12, 2021, had received satisfactory proof of loss not only by the ATA estimate, but of its own estimate as well. This renders the original estimate relevant to ISIC's failure to timely and adequately issue any payment to Plaintiff as the first and only payment was made on January 31, 2022—108 days after receiving satisfactory proof of loss by way of the ATA estimate and fifty-one days after receiving satisfactory proof of loss by way of the original JS Held estimate.

Louisiana statute also imposes a duty of good faith and fair dealing on insurers, obligating them to adjust claims fairly and promptly.[47] Even calculating from the date of the ATA inspection, ISIC waited over a month to have JS Held inspect the property. The original estimate was not provided until almost two months after the original inspection and the estimate was not "finalized"

[45] *See* La. R.S. §§ 22:1892 and 22:1973.
[46] *See, e.g. Reed*, 857 So. 2d at 1021.
[47] *See* La. R.S. § 22:1973(A)

for nearly another month. These dates are entirely relevant to whether or not ISIC adjusted this claim fairly or promptly.

Further, the testimony to be elicited regarding the preparation of the original estimate and its subsequent revisions is clearly relevant to whether ISIC adjusted Plaintiff's claim in good faith or if its actions were reasonable in failing to pay any amounts.

### F. The Original Estimate is Not Unfairly Prejudicial, nor Will it Mislead or Confuse the Jury

ISIC argues to this court that the original estimate would be overly prejudicial and would mislead or confuse the jury because it presents a figure of damages higher than that included in the final estimate. As relevant evidence is inherently prejudicial, the question therefore is whether or not that prejudice is so unfair that it would substantially outweigh the probative value of same.[48]

It must be re-iterated here that the estimate at issue is not one prepared on behalf of the Plaintiff; this estimate was prepared by the company contracted by ISIC itself on its behalf. The fact that ISIC did not and does not like the amounts originally documented or the testimony of Mr. Lopez regarding that original estimate does not necessarily make same prejudicial, misleading, or confusing to the jury. What it does do, however, is present necessary facts that will assist the jury in its fact-finding capacity during the trial on this matter. ISIC cannot use a Motion in Limine to supersede the purview of the jury in making coverage or credibility determinations. Likewise, ISIC cannot use a Motion in Limine to preemptively bolster the opinions of its engineer.

## III. CONCLUSION

ISIC filed its Motion in Limine seeking to exclude any evidence or testimony related to JS Held's original estimate and bases its arguments on whether the original estimate is relevant to the

---

[48] *See, e.g. U.S. v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

claims made herein. ISIC's position therein asserts that the only issue in this matter to be presented to the jury is the amount of damages caused by Hurricane Ida. That is simply not the case. While Plaintiff is still seeking to recover what it is owed under the policy for the damages caused by Hurricane Ida, Plaintiff's claims are not so limited. The original estimate is not only relevant as a measure of the damages sustained, but also to ISIC's actions, or inactions, in adjusting Plaintiff's Ida claim. The mere fact that ISIC is unhappy with the amount of damages Mr. Lopez documented in his original estimate or the testimony that he gave regarding that original estimate does not make same inherently prejudicial, confusing, or misleading. Considering the foregoing, Plaintiff respectfully requests this court deny ISIC's Motion in Limine.

**WHEREFORE**, Plaintiff, JW Development, LLC, prays that Defendant, Independent Specialty Insurance Company's Motion in Limine to Exclude Evidence and Testimony Regarding JS Held's Original Estimate be **DENIED.**

**RESPECTFULLY SUBMITTED:**

*_/s/ Mary K. Taliancich__________*
Galen M. Hair, La. Bar. No. 32865
Mary K. Taliancich, La. Bar No. 39357
**HAIR SHUNNARAH TRIAL ATTORNEYS, LLC. d/b/a INSURANCE CLAIM HQ d/b/a INSURANCE CLAIM LAWYERS, INC.**
3540 S. I-10 Service Rd., W, Ste. 300
Metairie, Louisiana 70001
Telephone: 504-684-5200
Facsimile: 504-613-6351
hair@hairshunnarah.com
mary@insuranceclaimhq.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing on all counsel of record in these proceedings by email, facsimile transmission, electronic court filing system, and/or United States Mail, postage prepaid, this 19th day of July, 2022.

Mary K. Taliancich, Esq.